IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

JOHNNY BOLD, JR.,

    Plaintiff,                                        No: 1:09-cv-1049-JDB-egb

    v.

WASTE MANAGEMENT, INC.
OF TENNESSEE,

    Defendant.

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

The Plaintiff, Johnny Bold, Jr., brought this action against Defendant, Waste Management, Inc. of Tennessee ("WM"), on March 4, 2009, for damages under Title VII of the Civil Rights Act of 1964 ("Title VII") and 42 U.S.C. § 1981. Before the Court is the Defendant's motion for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket Entry ("D.E.") 20.) For the reasons set forth hereinafter, the Court **GRANTS** WM's motion.

STANDARD OF REVIEW

Rule 56 provides in pertinent part that a ". . . judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); see Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); Canderm Pharmacal, Ltd. v. Elder Pharm., Inc., 862 F.2d 597, 601 (6th Cir. 1988). " 'A fact is 'material' and precludes grant of summary judgment if proof of that fact would have the effect of establishing or refuting one of [the] essential elements of a cause of

action or defense asserted by the parties, and would necessarily affect application of [an] appropriate principle of law to the rights and obligations of the parties.' " Midwest Media Prop., LLC v. Symmes Twp, Ohio, 503 F.3d 456, 469 (6th Cir. 2007) (quoting Kendall v. Hoover Co., 751 F.2d 171, 174 (6th Cir. 1984)). A fact may not be material even if true. Griffin v. Hardrick, 604 F.3d 949, 956 (6th Cir. 2010).

On a Rule 56 motion, "[t]he district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party." American Civil Liberties Union of Ky. v. Grayson County, Ky., 591 F.3d 837, 843 (6th Cir. 2010), *reh'g denied*, 605 F.3d 426 (6th Cir. 2010) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)). However, at the summary judgment stage, the nonmoving party must present some "specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324. "Rule 56(e) therefore requires the nonmoving party to go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Celotex, 477 U.S. at 324 (internal quotation marks omitted). Faced with a properly supported Rule 56 motion, a plaintiff cannot succeed "without any significant probative evidence tending to support the complaint." Anderson, 477 U.S. at 249 (citation and internal quotation marks omitted). "The central issue is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.' " Kentucky Speedway, LLC v. Nat'l Ass'n of Stock Car Auto Racing, Inc., 588 F.3d 908, 915 (6th Cir. 2009), *reh'g & reh'g en banc denied* (Feb. 18, 2010) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Determining credibility, weighing evidence,

and drawing reasonable inferences are left to the trier of fact." Climer v. Dillenbeck, No. 08-11074, 2009 WL 270153, at *3 (E.D. Mich. Feb. 3, 2009) (citing Anderson, 477 U.S. at 255).

FACTUAL BACKGROUND

Bold is an African-American resident of Jackson, Tennessee who worked for WM—a Texas corporation—in Alamo, Tennessee from the summer of 1985 until he was terminated on July 16, 2007. (D.E. 1, Complaint, ¶¶ 5-6, 12-14.) His discharge came after a routine audit of his route by WM supervisor John Cianciolo between June 25, 2007 and June 29, 2007, wherein Cianciolo observed Plaintiff making unscheduled garbage pickups and performing his job responsibilities in a dilatory or otherwise unsatisfactory fashion. (D.E. 20-1, Defendant's Statement of Undisputed Facts, ¶¶ 2, 8-9.)[1] Because WM does not receive remuneration for

---

[1] The Court notes that in Bold's response to the Defendant's statement of undisputed facts, he disputes several of WM's facts by pointing to his own statement of facts, but in many instances, the Court cannot construe Bold's statements as actual denials of WM's assertions. For example, WM says, "The Employee Disciplinary Report relative to the Plaintiff's termination states: 'during the audit week of route 006, Mr. Bold was observed servicing WM customers on unauthorized service days.' " (D.E. 20-1, Defendant's Statement of Undisputed Facts, ¶ 5.) In support of this contention, WM cites the Disciplinary Report, which does, in fact, contain the statement—verbatim—that Defendant asserts it does. (D.E. No. 20-1, p. 34, Bold Depo., Exhibit 3.) Nevertheless, Plaintiff "dispute[s]" this, supported only by two of his own statements of fact that in no way contradict the fact that the Disciplinary Report contains the quoted language. (D.E. 25-1, Plaintiff's Response to Defendant's Statement of Undisputed Facts, pp. 1, 8-9.) Thus, because Plaintiff can adduce no evidence calling into question the veracity of WM's statement, the Court will deem it admitted.

unscheduled pickups, the union agreement to which Bold was subject explicitly provided, *inter alia*, that an employee was subject to immediate termination for making pickups that were not on his route sheet. (Id. at ¶¶ 11-15.)[2] The Plaintiff does not deny that he made unauthorized pickups, but instead maintains that on three occasions during the previous six years, a Caucasian dispatcher for Waste Management named Jamie Johnson told him to make other unauthorized stops. (D.E. 20-1, Defendant's Statement of Undisputed Facts, ¶ 24) (citing D.E. 20-2, Bold Deposition, pp. 91-93.) He concedes, however, that on the date at issue—June 26, 2007—he unsuccessfully attempted to obtain authorization for an unscheduled pickup from his supervisor and a dispatcher, but made the pickup nonetheless. (Id. at ¶ 26.) Bold's union representative, Bobby Carter, appealed his discharge from WM in July of 2007, but the termination was upheld by Troy Dickson, who was at that time a district manager with WM. (Id. at ¶¶ 13, 25.)

While Bold was employed with WM, a rumor circulated among his co-workers that he was romantically involved with Bobbie Greene, another WM employee. (Id. at ¶ 27.)[3] From the pleadings, it is apparent that there was at least one incident involving Greene, the Plaintiff, and potentially some other WM employees. However, neither the Plaintiff nor the Defendant has

---

[2] Again, Plaintiff "dispute[s]" one of these contentions without explaining how it is inaccurate. WM avers, "In his deposition, the Plaintiff agreed that pursuant to the agreement between Waste Management of Tennessee Jackson [sic] and the Union, an employee is subject to immediate termination if he services a customer on unauthorized service days." (D.E. No. 20-1, Defendant's Statement of Undisputed Facts, ¶ 12.) In response, Plaintiff takes issue with this statement, contending simply, "This question was objected to because it misquoted the Union contract." (D.E. No. 25-1, Plaintiff's Response to Defendant's Statement of Undisputed Facts, p. 1.) However, in the portion of Bold's deposition that WM cites to support this claim, his counsel's only objection was one regarding the form of the question, not the substance of it or Plaintiff's answer thereto. (D.E. 20-1, Bold Deposition, pp. 26-27.) Moreover, the union contract does provide for immediate termination for unauthorized pickups, and Bold does not dispute that he received instructions as to the contents of the union agreement. (D.E. 20-1, Union Agreement, pp. 54-55; D.E. 20-1, Statement of Undisputed Facts, ¶ 11.) Thus, because Bold has not disputed the line of questioning that WM cites, the Court does not construe his denial as a legitimate refutation of Defendant's statement.

[3] Yet again, Plaintiff "dispute[s]" this statement without being able to offer any proof to the contrary. In Bold's deposition, he was asked, "[Y]ou know there were rumors at Waste Management that you were having a romantic relationship with Bobbie [Greene]?" and he answered, "Yes." He was then asked, "Did you know that while you were employed out there at Waste Management?" to which he responded, "Yes. Yes." (D.E. 20-2, Bold Depo., p. 108.) Therefore, because Plaintiff once again has interposed a completely specious objection to a statement that is supported unequivocally by the factual record—in this case, *his own deposition*—the Court will deem WM's assertion admitted.

provided the Court with a coherent narrative of the chronology or the nature of the events surrounding the incident(s) involving Greene, and because each has attached only non-sequential portions of depositions and documents, the Court is unable to discern the true nature of what occurred. Therefore, the Court, at this point, will set forth the parties' contentions in their own words with respect to Greene. Bold avers as follows:

> I was a witness against Jason Johnson, Route Manager, in a sexual harassment claim against an employee. Bobbie Greene, a female employee complained to management that she was being sexually harassed by Jason Johnson. (D.E. 1, Complaint, ¶ 20.)
>
> I became a witness to Jason Johnson's sexual harassment toward Bobbie Greene. Management never interviewed me after I provided a copy of the phone conversation in which Jason Johnson was calling Bobbie Greene a whore who was having sex with me on the job. In fact, Jason Johnson confronted me and told me that I was preventing him from having sex with Bobbie Greene. (Id. at ¶ 21.)
>
> Jason Johnson stated he did not harass Ms. Greene. After I became a witness for Ms. Greene, Jason Johnson stated he was only joking with Ms. Greene. (Id. at ¶ 23.)
>
> Management blamed me for being a part of some horse play that culminated in a sexual harassment complaint against Jason Johnson. Management did not discipline anyone as a result of Bobbie Greene's complaint. (Id. at ¶ 24.)
>
> I was terminated within six weeks after I spoke up as a witness on behalf of Bobbie Greene. (Id. at ¶ 29.)

The Defendant argues the following facts, all of which the Plaintiff concedes:

> The Plaintiff testified that Bobbie Greene was going to go to the office and complain about him for putting out rumors of a sexual nature about Ms. Greene. (D.E. 20-1, Defendant's Statement of Undisputed Facts, ¶ 28.)
>
> Jason Johnson and Bobbie Greene called Tony Neely, a co-worker of the Plaintiff's, regarding comments that the Plaintiff had reportedly been making about Ms. Greene, and Mr. Neely replied that the Plaintiff and Tommy Cole (another co-worker) were

5

laughing about the Plaintiff "f'ing ole girl[4] from behind and slapping her on the ass." Ms. Greene heard Mr. Neely make these comments over the speaker phone. (Id. at ¶ 29.)

With regard to his allegation in Paragraph 21 of the Complaint that "I became a witness to Jason Johnson's sexual harassment toward Bobbie Greene," the Plaintiff explained that Troy Dickson called him into the office and that he told Mr. Dickson "my side of the story." (Id. at ¶ 31.)

The Plaintiff testified that though he believes that Ms. Greene went through a process with the EEOC "because she didn't like the way things were done", he was not a witness in that proceeding, nor was he ever asked to testify for Ms. Greene in any proceeding. (Id. at ¶ 32.)

Mr. Johnson apologized to Bobbie Greene for the manner in which he made Ms. Greene aware of the comments that the Plaintiff was making about her, and Waste Management employees were required to have diversity training in the aftermath of the Bobbie Greene incident. (Id. at ¶ 33.)

Tony Neely did not deny making the statements regarding the Plaintiff's comments about Bobbie Greene that Ms. Greene heard over the speaker phone. (Id. at ¶ 34.)

Bold maintains that his termination was motivated by racial animus and a desire to retaliate against him for having been a "witness" to sexual harassment. (D.E. 1, Complaint, ¶¶ 30-37.) He also asserts that the Defendant's actions deprived him of post-employment protection as outlined in 42 U.S.C. § 1981. (Id. at ¶¶ 38-40.)

ANALYSIS

A. Title VII Discrimination and 42 U.S.C. § 1981

Plaintiff first contends that he suffered an adverse employment action motivated by racial discrimination in violation of Title VII, which provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an employer . . . to discharge any individual . . . because of

---

[4] WM employees understood that "ole girl" was a nickname commonly used to refer to Greene. (D.E. 25-1, Plaintiff's Response to Defendant's Statement of Undisputed Facts, p. 4.)

such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Claims under § 1981 are reviewed under the same standard as Title VII claims.[5] Barrett v. Whirlpool Corp., 556 F.3d 502, 511-12 (6th Cir. 2009), *reh'g denied* (March 27, 2009) (citing Johnson v. Univ. of Cincinnati, 215 F.3d 561, 573 n.5, 574-75 (6th Cir. 2000)).

"The ultimate question in every employment discrimination case involving a claim of disparate treatment[, such as that alleged here,] is whether the plaintiff was the victim of intentional discrimination." Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 153, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). At the summary judgment stage, a plaintiff must "adduce either direct or circumstantial evidence in order to prevail on a Title VII race-discrimination claim." Upshaw v. Ford Motor Co., 576 F.3d 576, 584 (6th Cir. 2009). Bold bases his assertion on the latter, which invokes the McDonnell Douglas/Burdine burden-shifting paradigm. *See* Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); Upshaw, 576 F.3d at 584. Under this analysis, a plaintiff first must establish a prima facie case of race discrimination. Upshaw, 576 F.3d at 584. If he is successful, the burden then shifts to the defendant to offer a legitimate, nondiscriminatory reason for its action. Id. In the event the employer carries its burden, it is incumbent upon the plaintiff to show by a preponderance of the evidence that the reason proffered by the employer was pretextual. Id. "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer

---

[5] Bold asserts that because most of WM's arguments only make reference to Title VII and the accompanying body of law, it has "conceded" his § 1981 claim. (D.E. 25-6, Response to MSJ, p. 5.) However, Defendant indicates in its memorandum that it intended to conflate the analyses for Title VII and § 1981: "Plaintiff brings this Complaint pursuant to Title VII, the Civil Rights Act of 1964, *as amended by § 1981(a) and 42 U.S.C. §§ 1981, 1983, 1988*, and sets forth two causes of action." (D.E. 20-1, WM's MSJ, pp. 1-2) (emphasis added). Because the analysis of § 1981 and Title VII claims is identical, WM's decision to consolidate its discussion is sensible. Since Plaintiff's cause of action under § 1981 fails for the same reasons as does his Title VII claim, WM, in structuring its memorandum as it did, has not waived its right to seek summary judgment on the § 1981 claim.

unlawfully discriminated." Reeves, 530 U.S. at 148.  Throughout the McDonnell Douglas/Burdine analysis, "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Upshaw, 576 F.3d at 584 (citation and internal quotation marks omitted).

In order to establish a prima facie case of race discrimination, the plaintiff must show that "(1) [he] is a member of a protected group, (2) [he] was subject to an adverse employment decision, (3) [he] was qualified for the position, and (4) [he] was replaced by a person outside of the protected class." Russell v. Univ. of Toledo, 537 F.3d 596, 604 (6th Cir. 2008).  "A plaintiff may also satisfy the fourth prong of a prima facie case showing by adducing evidence that [he] was treated differently than similarly situated non-protected employees." Id. (citation, alterations, and internal quotation marks omitted).  The burden of establishing a prima facie case of discrimination is not an onerous one, but if an employer successfully rebuts a prima facie case, the plaintiff must prove pretext by a preponderance of the evidence.  Cline v. Catholic Diocese of Toledo, 206 F.3d 651, 660 (6th Cir. 2000); Burdine, 450 U.S. at 252-53.

WM concedes that Bold satisfies the first three prongs of the prima facie case—as an African-American, he is a member of a protected group, his termination was an adverse employment action, and he was qualified for his position. (D.E. 20-1, WM's MSJ, p. 10.) However, it disputes Bold's ability to establish the fourth requirement. (Id. at pp. 10-11.) Plaintiff does not dispute that he was replaced by another African-American WM employee after he was terminated, but he claims instead that he was treated differently than similarly situated white employees. (D.E. 25-6, Response to MSJ. pp. 7-8.) Specifically, he contends that Jamie Johnson and Kim Harville, white employees of WM who appear to be dispatchers and/or sales representatives, were not disciplined for telling drivers to pick up dumpsters that were not on

8

their route sheets. (Id. at p. 7.)

When explaining the "similarly situated" portion of the prima facie case, the Sixth Circuit has held:

> [I]t is fundamental that to make a comparison of a discrimination plaintiff's treatment to that of non-minority employees, the plaintiff must show that the "comparables" are similarly situated *in all respects*.. . . [T]he plaintiff need not demonstrate an exact correlation with the employee receiving more favorable treatment in order for the two to be considered "similarly-situated"; rather the plaintiff and the employee with whom the plaintiff seeks to compare himself or herself must be similar in "all of the *relevant* aspects." . . . [T]his Court has asserted that in applying the standard that plaintiff must show that he is treated differently than similarly situated employees from outside the class courts should not demand exact correlation, but should instead seek relevant similarity.

Clayton v. Meijer, Inc., 281 F.3d 605, 610-11 (6th Cir. 2002) (internal citations, quotation marks, and alterations omitted) (emphasis in original); s*ee also* Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 352 (6th Cir. 1998) (internal citations and quotation marks omitted) ("to be deemed 'similarly-situated' in the disciplinary context, the individuals with whom the plaintiff seeks to compare his/her treatment must have dealt with the same supervisor, have been subject to the same standards and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it").

Accepting as accurate Bold's assertion that Jamie Johnson and Kim Harville instructed drivers to pick up dumpsters that were not on their routes, he nevertheless has not established that these "comparables" are similarly situated to him *in all relevant respects*. In fact, he makes no argument that they are similarly situated employees at all. Although their exact job titles are unclear, what is undisputed is that they were not drivers—like Bold himself—or even assigned to

9

trucks. Bold was terminated for making unauthorized pickups. Johnson and Harville, because they were not drivers, could not have engaged in the same conduct that resulted in Bold's discharge—even though Plaintiff maintains that they instructed drivers to engage in actions similar to those that resulted in Plaintiff's discipline. Moreover, despite his assertion that "it is undisputed" that Johnson and Harville report to the same supervisors as Bold, he has pointed to no evidence in the record establishing that such is the case. (D.E. 25-6, Response to MSJ, p. 7.) Without proof of this statement, it is nothing more than a conclusory allegation, which is insufficient as a matter of law to defeat a motion for summary judgment. *See* Arendale v. City of Memphis, 519 F.3d 587, 605 (6th Cir. 2008) (citations omitted) ("Conclusory assertions, supported only by [Plaintiff's] own opinions, cannot withstand a motion for summary judgment").

      Moreover, even if Bold had been successful in alleging a prima facie case of discrimination, WM has offered legitimate reasons for his termination, which Plaintiff has not shown to be pretextual. WM cites both John Cianciolo's report to WM after his evaluation of Bold and the Disciplinary Report relative to his termination, which, taken together, unequivocally show that WM terminated Plaintiff for the reasons it gave him. (D.E. 20-1, Defendant's Statement of Undisputed Facts, ¶¶ 5, 8.) The thrust of Plaintiff's attempt to demonstrate that these reasons were pretextual is his contention that other WM drivers "were picking up stops that were not on their route [sic]." (D.E. 25-6, Response to MSJ, p. 10.) However, even accepting this assertion as accurate, it is immaterial in establishing that racial discrimination was the true motive unless Plaintiff can demonstrate that these other employees were not members of a protected race class—which he has not done.[6] In other words, if racial

---

[6] In fact, Defendant avers that these other employees to whom Plaintiff refers were African-American, which Plaintiff does not deny. (D.E. 20-1, WM's MSJ, pp. 15-16 n.2.)

animus had been the true reason for Plaintiff's discharge, the other African-American drivers who committed similar offenses *also* would have been terminated. The fact that they were not proves nothing, perhaps apart from the egregiousness of Bold's conduct. Thus, he has presented no evidence tending to cast doubt on WM's justifications for discharging him, and therefore, he cannot establish that WM's stated reasons were merely pretextual. Absent such evidence, Plaintiff is nothing more than a "victim" of an employment action with which he disagrees, a situation that is insufficient to form the basis of a Title VII claim. *See* Mayberry v. Endocrinology-Diabetes Assocs., 926 F. Supp. 1315, 1323-24 (M.D. Tenn. 1996) (citing Wrenn v. Gould, 808 F.2d 493, 502 (6th Cir. 1987) ("an employee's subjective perception that [he] has suffered discrimination, in the absence of objective evidence substantiating such perception, does not constitute probative evidence of such discrimination").

Accordingly, because Bold can prove no set of facts in support of his claim of race discrimination, WM is entitled to judgment as a matter of law on his causes of action under 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 1981.

    B.  Title VII Retaliation

Like Title VII intentional discrimination claims that lack direct evidence of discrimination, retaliation claims based on circumstantial evidence are analyzed under the McDonnell Douglas/Burdine burden-shifting framework. Ladd v. Grand Trunk W. R.R., Inc., 552 F.3d 495, 502 (6th Cir. 2009). To demonstrate a prima facie case of retaliation under the statute, the plaintiff must establish that: "(1) he engaged in activity protected by Title VII; (2) this exercise of protected rights was known to the defendant; (3) the defendant thereafter took a materially adverse action against the plaintiff or subjected the plaintiff to severe and pervasive

retaliatory harassment; and (4) there was a causal connection between the protected activity and the materially adverse action." Lindsay v. Yates, 578 F.3d 407, 418 n.10 (6th Cir. 2009).

As the Court noted above, the factual circumstances surrounding the Bobbie Greene events have not been satisfactorily articulated by either party, and neither party's summary judgment brief provides any additional clarity. Just as Plaintiff struggles to establish his prima facie case, WM also has failed to make a compelling argument that he cannot do so. However, even assuming that Plaintiff has set forth a prima facie case for Title VII retaliation, such a claim fails nonetheless. If Bold has established a prima facie case, the burden shifts to WM to present legitimate reasons for terminating him, which the Plaintiff then must rebut as pretextual. As demonstrated *supra*, Section A, WM has articulated multiple reasons for its decision to terminate Bold, and he has been unable to demonstrate that any of them are pretextual. In his response, he focuses entirely upon his assertions that he can establish a prima facie case, but does not address the issue of pretext at all with regard to his Title VII retaliation claim. Therefore, WM is entitled to judgment as a matter of law on this cause of action.

## CONCLUSION

For the reasons set forth herein, Defendant's motion for summary judgment is **GRANTED**. The clerk is directed to enter judgment in favor of Waste Management.

**IT IS SO ORDERED** this, the 1st day of July, 2010.

s/ J. DANIEL BREEN  
UNITED STATES DISTRICT JUDGE
